IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

REPRODUCTIVE HEALTH SERVICES,                )
on behalf of its patients, physicians and        )
staff, et al.,                                            )
                                                        )
      Plaintiffs,                                   )
v.                                                      )      CASE NO. 2:14-cv-1014-SRW
                                                        )
STEVEN T. MARSHALL, in his official         )
capacity as Attorney General of the           )
State of Alabama, et al.,                          )
                                                        )
      Defendants.                                 )

## MEMORANDUM OPINION, DECLARATORY JUDGMENT, AND ORDER[1]

      This matter is before the court on the parties' cross motions for judgment on the pleadings.

## I.    Introduction

      On September 2, 2016, the court determined that a justiciable controversy exists in this case with respect to plaintiffs' challenges to the State of Alabama's parental consent and judicial bypass statutes ("the Act"), which were substantially amended in 2014.  *See Reproductive Health Services v. Strange*, 204 F. Supp. 3d 1300 (M.D. Ala. 2016) ("*RHS I*");[2] *see also* Ala. Code §§ 26-21-1, et seq.; H.B. 494, 2014 Leg. Sess. (Ala. 2014) (enacted;

---

[1] The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a). (Doc. 24, 25).

[2] *RHS I* should be read in tandem with this decision. In *RHS I*, the court discusses the well-established right of a state to enact a law requiring a minor to secure either parental consent or a court's approval before undergoing an abortion procedure. To the extent that defendants raise anew their previously asserted and adjudicated arguments regarding justiciability, Eleventh Amendment immunity, and abstention, *RHS I* sets out the court's decision on those issues.

effective July 1, 2014); Ala. Code § 26-21-4 (judicial bypass provision). The court subsequently held a status conference, during which the parties agreed that the plaintiffs' claims and defendants' defenses are exclusively matters of law to be decided without the need for an evidentiary record. *See*, *e.g.*, *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 462 U.S. 476, 491 (1983) (the *Bellotti II* analysis is "one purely of statutory construction."). Following the status conference, the court set a deadline for the parties to file any motions for judgment on the pleadings, and plaintiffs and defendants respectively filed such motions pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. 60, 63).

The parties all argue that a declaratory judgment is due to be entered as to all of plaintiffs' claims. Specifically, the plaintiffs and defendants each seek a declaratory judgment as to the constitutionality of the following provisions of the Act in light of the Supreme Court's plurality opinion in *Bellotti v. Baird*, 443 U.S. 622 (1979) ("*Bellotti II*") and its progeny: Alabama Code §§ 26-21-4(a), (c), (f), (e), (i), (j), (k), (l) and (n).[3] (Doc. 1; Count I). Moreover, all parties request a declaratory judgment regarding plaintiffs' claim that the Act violates a minor petitioner's "right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment ... by permitting" disclosure of "deeply sensitive, private information about the minor to others, including to any potential witnesses." (Doc. 1 at 13; Count II) ("informational privacy claim"). In addition, the

---

[3] Since *Bellotti II*, the Supreme Court has applied the four *Bellotti II* factors in a small number of decisions: *H. L. v. Matheson*, 450 U.S. 398 (1981); *Planned Parenthood Assn. of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476 (1983); *Akron v. Akron Center for Reproductive Health, et al*, 462 U.S. 416 (1983), *overruled by Planned Parenthood v. Casey*, 505 U.S. 833 (1992) ("*Akron I*"); *Ohio v. Akron Center for Reproductive Health, Inc.*, 497 U.S. 502 (1990) ("*Akron II*"); *Hodgson v. Minnesota*, 497 U.S. 417 (1990); and *Lambert v. Wicklund*, 520 U.S. 292 (1997). The Eleventh Circuit's only decision concerning the *Bellotti II* requirements is *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462 (11th Cir. 1991).

plaintiffs claim that certain provisions of the Act violate out-of-state minors' rights to travel and to equal protection under the law, but all parties are in agreement regarding the correct interpretation of the challenged provisions. (Doc. 1; Counts III, IV). Plaintiffs also move for preliminary injunctive relief and a permanent injunction prohibiting enforcement of the challenged provisions of the Act. (Doc. 1, 2). These motions and issues have been fully briefed and are ripe for decision.

Under *Bellotti II,* plaintiffs claim that the State of Alabama has created an unconstitutional judicial bypass option for minors who seek an abortion without the consent of a parent or legal guardian. Specifically, the plaintiffs contend that the addition of a district attorney ("DA"), a guardian ad litem on behalf of the fetus ("GAL"), and – under some circumstances – the minor petitioner's parent, parents or legal guardian as parties to the bypass proceeding causes that proceeding no longer to afford the minor the constitutionally guaranteed option of an anonymous and expeditious bypass. Also, plaintiffs argue that certain provisions of the Act allowing subpoenas to issue for the presence of witnesses violate a minor petitioner's right to anonymity, and that the Act permits discretionary delays in the resolution of the petition such that the bypass process lacks the requisite expedition to satisfy the Supreme Court's mandates in *Bellotti II*. In addition, the plaintiffs maintain that the Act "unconstitutionally transforms the bypass from an *ex parte* hearing into an adversarial" proceeding. (Doc. 61 at 11). For their part, defendants zealously defend the constitutionality of the Act.

The court finds that neither plaintiffs nor defendants are precisely correct in their interpretations of the Act; however, based upon nearly four decades of binding Supreme

Court precedent, certain provisions of the Act undoubtedly fail on a facial challenge to their constitutionality. *See* n. 3, *supra*. As explained more fully below, the offending portions of the Act are severable, and a declaration of their unconstitutionality will still leave Alabama with a constitutional bypass option, something that the Alabama Legislature clearly intended to achieve when it amended the Act in 2014. *See* Ala. Code §§ 26-21-1, 26-21-4.

Defendants, however, are entitled to judgment as a matter of law as to plaintiffs' informational privacy claim. Plaintiffs' claims regarding the rights of out-of-state minors no longer present an actual controversy for this court to decide.

## II.    Standard of review – motion for judgment on the pleadings

The Federal Rules of Civil Procedure provide that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998).

In evaluating a motion for judgment on the pleadings, the court must review the factual allegations in the light most favorable to the nonmoving party.[4] *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). However, the court need not credit

---

[4] The only allegations of fact that form the basis of this decision are discussed herein. Where plaintiffs' factual allegations are not expressly discussed, it is because they are not material to the ultimate issues. Also, the parties raise numerous legal arguments that are not addressed here, most notably with regard to the expedition of the bypass proceeding under the Act and to plaintiffs' assertion that *Bellotti II* does not countenance an adversarial judicial bypass proceeding and the Act unconstitutionally establishes one. The court has considered all the parties' arguments in ruling on the motions at bar; however, it does not express any opinion with respect to those arguments that are not specifically discussed.

a nonmoving party's legal contentions. *See Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1304 n.12 (11th Cir. 2003) (citing *Honduras Aircraft Registry, Ltd. v. Government of Honduras*, 129 F.3d 543, 545 (11th Cir. 1997)).

A judgment on the pleadings pursuant to Rule 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law[,]" *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996), or when "the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Jiles v. United Parcel Serv., Inc.*, 413 F. App'x. 173, 174 (11th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

## III.    Discussion

### A.    Alabama's parental consent and judicial bypass laws

Alabama law mandates that "no physician shall perform an abortion upon an unemancipated minor unless the physician or his or her agents first obtain the written consent of either parent or the legal guardian of the minor." Ala. Code § 26-21-3(a).  There are limited exceptions to the parental consent requirement, one of which is the judicial bypass exception. *See id.*; Ala. Code § 26-21-4. As a matter of law, states that have parental consent statutes must also enact a law that allows a minor to obtain a court order to bypass her parent's or guardian's consent. *See Bellotti II*, 443 U.S. at 649. In *RHS I*, the court summarized the pertinent provisions of Alabama's judicial bypass law as follows.

> Prior to the 2014 amendments, Alabama's judicial bypass statute allowed for an ex parte hearing which included as participants, in almost all instances, only the judge, the minor applicant, and her attorney. The new Act

substantially alters the former bypass scheme; it is allegedly unique among all other states' judicial bypass laws. (Doc. 3 at 8).

Under Alabama's former judicial bypass law, which was enacted in 1987 and remained substantively unchanged for 27 years, the only necessary party to the bypass proceedings identified by statute was the minor petitioner. *See* Ala. Code 26-21-4 (2013). At his or her discretion, the presiding judge also could use a provision of the Alabama Rules of Civil procedure to appoint a guardian ad litem ("GAL") to represent the interests of the "infant unborn," but the judicial bypass law did not independently permit the appointment of a GAL or vest that person with the same rights as a party to the bypass proceedings. *See* Ala. R. Civ. P. 17(c); *cf*. Ala. Code § 26-21-4 (2013), Ala. Code § 26-21-4. A minor petitioner was entitled to a decision from the reviewing court within 72 hours after filing her petition, excluding Saturdays, Sundays and legal holidays, unless the petitioner requested an extension of time and the court permitted the delay. *See* Ala. Code § 26-21-4(e) (2013). The minor was the only person with standing to appeal the decision of the reviewing judge. Ala. Code § 26-21-4(h) (2013). "If notice of appeal [were] given, the record of appeal [was to] be completed and the appeal [was to be] perfected within five days from the filing of the notice of appeal." *Id*.

The 2014 Act expands the number of potential parties to a judicial bypass proceeding, and makes the inclusion of some of those parties mandatory. *See* Ala. Code § 26-21-4. Those additional parties are either required or permitted to "examine" the petitioner and to represent interests in addition to those of the petitioner, including the interests of the State of Alabama, the unborn child, and the minor's parent(s) or legal guardian. *See id*. For example, when a minor files a judicial bypass petition, the court now must immediately notify the district attorney ("DA") of the county in which the petition is filed or in which the petitioner resides, and the DA is then automatically joined as a necessary party to the bypass proceedings. Ala. Code § 26-21-4(i). The 2014 Act also allows the minor's parent(s) or legal guardian to be joined as parties if those individuals learn of the existence of the proceedings. Ala. Code § 26-21-4(l). The new law contains a statutory provision independent of Alabama Rule of Civil Procedure 17(c) which allows the reviewing court to appoint a GAL to represent "the interests of the unborn child[.]" Ala. Code § 26-21-4(j). The powers of the GAL are expansive, and that person also is joined as a party once appointed by the court. *Id*.

In addition, the 2014 Act codifies the rights and obligations of the DA, GAL, and the parent(s) or legal guardian in their capacities as parties. The DA and the GAL are statutorily mandated to "participate as [advocates] for

the state to examine the petitioner and any witnesses[.]" Ala. Code § 26-21-4(i), (j). Alabama's interests, as explained by the Act, include "protecting minors from their own immaturity" and "protect[ing] the state's public policy to protect unborn life[.]" Ala. Code § 26-21-1(d). The minor's parents, once joined as parties, have the same rights as the DA, GAL, and the minor petitioner. See Ala. Code § 26-21-4(l). All parties may be represented by an attorney, appeal the hearing judge's decision, request extensions of time, and have access to subpoena powers to compel witnesses to testify.

Moreover, the 2014 Act replaces the requirement in the former law that the hearing judge must issue a decision within 72 hours and the appeal must be "perfected" within five days. Ala. Code § 26-21-4(h) (2013). The law permits discretionary delays by the reviewing judge, either *sua sponte* or upon request by any party, "subject to the time constraints of the petitioner related to her medical condition." Ala. Code § 26-21-4(k).

*RHS I*, 204 F. Supp. 3d at 1307-08.

## B.   The plaintiffs' *Bellotti II* challenges to the Act

The legal framework that applies to the substance of plaintiffs' *Bellotti II* claim

begins with the well-established right of a minor to obtain an abortion of a non-viable fetus.

*See Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976); *Bellotti II*,

443 U.S. 622.

The Constitution protects a woman's right to terminate her pregnancy. This right, derived from the Due Process Clause of the Fourteenth Amendment, was reaffirmed by the U.S. Supreme Court in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), which left intact the essential holding of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This right is not limitless, however; the State has legitimate interests in protecting the health of the woman and the potential life of a fetus. Accordingly, the Court in *Casey* developed a standard to distinguish between lawful state regulation of abortion and regulation that violates due process. The Court held that when a regulation imposes a "substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus," it unduly burdens the right to choose abortion. *Id.* at 877, 112 S.Ct. 2791. And "where state regulation imposes an undue burden ... the power of the State reach[es] into the heart of the liberty protected by the Due Process Clause." *Id.* at 874, 112 S.Ct. 2791. Thus, even "a statute

> which ... further[s] the interest in potential life or some other valid state interest," but "has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." *Id.* at 877, 112 S.Ct. 2791. On the other hand, "reasonable measures" regulating abortion – even those that pose incidental inconvenience – are valid so long as they do not create a substantial obstacle to a woman's exercise of her due process right. *Id.* at 883, 112 S.Ct. 2791.

*Planned Parenthood Southeast v. Bentley*, 951 F. Supp. 2d 1280, 1285 (M.D. Ala. 2013) (footnote omitted). "The rule announced in *Casey* … requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2309 (2016), *as revised* (June 27, 2016).

The application of the *Bellotti II* criteria to the Act is a matter of "purely … statutory construction," *Ashcroft*, 462 U.S. at 491, and the court must "measur[e] [the Act's] challenged provisions against [the] [*Bellotti II*] requirements." *RHS I*, 204 F. Supp. 3d at 1326 & n.19 (citing *Bellotti II*, 443 U.S. at 623-51; *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462, 1475-82 (11th Cir. 1991)).

> "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." *Ashcroft*, 462 U.S. at 493, 103 S.Ct. 2517. Because this case is before the court on a Rule [12(c) motion for judgment on the pleadings] and the plaintiffs allege that the Act places unconstitutional barriers in a pregnant minor's path to an abortion through a judicial bypass, the defendants bear the burden to establish the Act's constitutionality. See [*Hodgson v. Minnesota*, 497 U.S. 417, 436 (1990)] (ruling on the constitutionality of a Minnesota parental consent law). "Under any analysis, the [Alabama] statute cannot be sustained if the obstacles it imposes are not reasonably related to legitimate state interests." *Id.* (citations omitted).

*Id.* at 1333.

In considering a facial challenge to the Act, the court will assume, as it must, that bypass courts in Alabama will comply with the Act's provisions. *See Miller*, 934 F.2d at 1479 (the district court erred by failing to accept, absent evidence to the contrary, that bypass courts would "observe" the mandates of Georgia's judicial bypass law, including the confidentiality requirements).

The judicial bypass requirements espoused in *Bellotti II* are "strict standards." *Id.* at 1475. "Under *Bellotti*, a pregnant minor is entitled to show the court either: '(1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests.'" *Id.* (quoting *Bellotti II*, 443 U.S. at 643-44 (footnote omitted)). Once the minor makes either showing, the bypass petition must be granted. *Id.* The *Bellotti II* requirements, as summarized by the Supreme Court, consist of four factors that a judicial bypass law must satisfy to pass constitutional muster: (1) the bypass procedure must afford the minor an opportunity to demonstrate that she is sufficiently mature to make an informed decision to have an abortion "without regard to her parents' wishes"; (2) the abortion procedure must be authorized if the court finds that, despite a minor's inability to reach an abortion decision "by herself[,]" "the abortion is in the minor's best interests and in cases where the minor has shown a pattern of physical, sexual, or emotional abuse"; (3) the bypass procedure "must insure the minor's anonymity";[5] and (4) the bypass exception must allow the minor

---

[5] The parties use the words "confidentiality" and "anonymity" interchangeably in their briefing. The Supreme Court has observed that, "Confidentiality differs from anonymity, but … [t]he distinction has not

a court to conduct proceedings with the expediency necessary "to allow an effective opportunity to obtain the abortion." *Akron II*, 497 U.S. at 511-13 (Kennedy, J.); *see also Lambert v. Wicklund*, 520 U.S. 292, 295 (1997) (setting out the four factors); *Bellotti II*, 443 U.S. at 643. "Otherwise, the attendant bypass procedure is constitutionally invalid." *Cincinnati Women's Services, Inc. v. Taft*, 468 F.3d 361, 369 (6th Cir. 2006).

The *Bellotti II* requirements must be considered in the context of the facial challenge brought by the plaintiffs.  For the reasons explained in *RHS I*, "an abortion law is facially unconstitutional if it places an 'undue burden' in the path of a 'large fraction' of the women the law affects."  204 F. Supp. 3d at 1333 (citing *Casey*, 505 U.S. at 895). Stated another way, the Act is unduly burdensome and therefore unconstitutional if, for a "large fraction" of affected minors seeking abortions under the Act's judicial bypass scheme, the challenged provisions of the Act "operate as a substantial obstacle to a woman's choice to undergo an abortion."  *Casey*, 505 U.S. at 895.[6] "A burden may be 'undue' either because the burden is too severe or because it lacks a legitimate, rational justification." *Id.* at 920 (Stevens, J., concurring in part and dissenting in part).

---

played a part in our previous decisions, and, even if the *Bellotti* principal opinion is taken as setting the standard, we do not find complete anonymity critical." *Akron II*, 497 U.S. at 513. A bypass statute must take reasonable steps to assure anonymity or risk being invalidated as unconstitutional. *See id.* The inquiry in the instant case turns on whether the steps taken to assure the petitioner's anonymity are "reasonable" – i.e., whether they reasonably safeguard the petitioner's anonymity.

[6] The parties agree that the court is required to follow the "undue burden" and "large fraction" analysis of *Casey* and *Hellerstedt*.  (*See* Doc. 61 at 26-27 ("The question of whether facial relief is an appropriate remedy to a law that violates women's right to abortion is ordinarily reviewed under *Casey's* large fraction test."); Doc. 63 at 15 ("[F]or each challenged provision, the Court must ask whether it would deprive a large fraction of affected pregnant minors of their right to an adequate [bypass] proceeding.")).

"Legislation is measured for consistency with the Constitution by its impact on those whose conduct it affects." *Id.* at 894. "The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* For example, in *Casey*, the law at issue affected fewer than one percent of women seeking abortions. *Id.* However, the Court's principal opinion found that the facial challenge "analysis does not end with the one percent of women upon whom the statute operates; it begins there." *Id.* Identifying the universe of affected individuals is the proper way to begin a facial challenge analysis.

Moreover, "*Casey* teaches that the court need not find that a law imposes an undue burden on a precise percentage of impacted women in order [to] find that facial relief is warranted facial invalidation." *Planned Parenthood Southeast, Inc. v. Strange*, 172 F. Supp. 3d 1275, 1288 (M.D. Ala. 2016), *judgment entered*, 2016 WL 1178658 (M.D. Ala. 2016) ("*Strange II*"). The plurality decision in *Casey* found that the challenged Pennsylvania statute "would affect a significant number of women, *without quantifying further.*" *Id.* (citing *Casey*, 505 U.S. at 888-94) (emphasis in original). Therefore, to determine the Act's constitutionality on a facial challenge in terms of the "undue burden" analysis under *Casey*, "the court must define the group of [minors] for whom the challenged law[s] [are] relevant and then assess whether the law[s] will create a substantial obstacle to obtaining an abortion for a significant number of the [minors] in that group." *Strange II*, 172 F. Supp. 3d at 1288. The Supreme Court recently reaffirmed that

> *Casey* used the language "large fraction" to refer to "a large fraction of cases in which [the provision at issue] is relevant," a class narrower than "all women," "pregnant women," or even 'the class of women seeking abortions

11

> identified by the State." . . . Here, as in *Casey*, the relevant group is "those
> [women] for whom [the provision] is an actual rather than an irrelevant
> restriction."

*Hellerstedt*, 136 S. Ct. at 2320 (quoting *Casey*, 505 U.S. at 894-95) (alterations in original).

To succeed on a facial challenge to the Act by way of a Federal Rule of Civil Procedure

12(c) motion for judgment on the pleadings, the plaintiffs must identify material allegations

from the complaint "to support a logical deduction that a significant number of women

would face an undue burden" because of the Act. *Strange II*, 172 F. Supp. 3d at 1288; *see*

*also* Fed. R. Civ. P. 12(c).

Accordingly, the relevant group of affected minors for each challenged provision of

the Act is necessarily dependent upon the challenged provision's language, as the court

must consider the statute in light of those minors for whom the various challenged

provisions are "actual rather than irrelevant." *Hellerstedt*, 136 S. Ct. at 2320 (quoting

*Casey,* 505 U.S. at 894-95). In other words, to render a challenged provision "relevant,"

the court defines the affected group as those minors who are subject to the provision's

triggering event. For example, where the Act grants a judge discretion pursuant to Alabama

Code § 26-21-4(j) to take an action allowed by the statute – *i.e.*, appointing a GAL to

represent the interests of the unborn child in the bypass proceedings – the affected group

with respect to this section is all minor petitioners in whose bypass proceedings the court

appoints a GAL for the fetus.[7] Any other group includes those for whom the statute is

---

[7] Certain triggering events set out in the Act – for example, the bypass court's appointment of a GAL to
represent the unborn child, or the joinder of parents or guardians who are "otherwise aware" of the bypass
proceedings as represented parties – inevitably will be projected future occurrences in a pre-enforcement
challenge, some of them mandatory, some discretionary. However, the legislative grant of authority or
direction to erect such potential obstacles to a minor's right of access to a constitutional judicial bypass is

irrelevant. As with the GAL provision, all challenged provisions of the Act must be read in a manner to include only those minors for whom the provision is relevant.

The court is mindful that, in applying *Casey*'s undue burden test, it must "consider the burdens a law imposes on abortion access together with the benefits those laws confer," as noted above. *Hellerstedt*, 136 S. Ct. at 2309. Because this case is before the court on a facial constitutional challenge and on the parties' motions for judgment on the pleadings, the court must glean the benefits of the Act from the Legislature's findings regarding the State interests that the Act seeks to advance.[8] According to the Act, the purposes of the legislation are both "to … establish and protect the rights of the minor mother" and "to protect the state's public policy to protect unborn life" – and, specifically, to do so, "in part, by requiring judges to make determinations pursuant to the judicial by-pass procedure and [by requiring] judges [to] be provided with sufficient evidence and information upon which they may make informed and proper decisions." Ala. Code § 26-21-1(d). *See also* Ala. Code § 26-21-1(c) (finding it "necessary that the Alabama courts be provided guidance in determining appropriate procedure and evidence."); Ala. Code § 26-21-1(f) ("the

---

a non-contingent, present fact, and the court thus must consider the effect of these authorized, and sometimes mandatory, constraints on the relevant group. To hold otherwise would permit a legislature to frustrate the application of *Casey*'s large fraction test in a facial challenge by rendering the group of affected persons always indeterminate, because the triggering event or contingency that creates that group will only occur in the future and, in some cases, possibly may never occur. In the abortion context, and after *Casey*, a legislature may not artfully draft an abortion law in manner that seeks to shield the statute from facial scrutiny. *See*, *e.g.*, *Hellerstedt*, 136 S.Ct. at 2319 (rejecting a state's "invitation to pave the way for legislatures to immunize their statutes from facial review" through a severability clause).

[8] The benefits discussed in *Hellerstedt* are related to the health of the mother and were ascertained based upon a factual record following discovery. The Act at issue here does not address the health of the mother or unborn child, which distinguishes it from the Texas statutes at issue in *Hellerstedt*.

Legislature's intent is to provide guidance and assistance to minors who find themselves in the unfortunate position of having to make such decisions and to courts who must act in the place of parents in providing an alternative by-pass mode for decision making."); Ala. Code § 26-21-1(e) ("it is always the Legislature's intent to provide guidance to the Alabama courts on how life may be best protected."). The Act also affirms the State's interest in enacting a constitutional bypass procedure. *See* Ala. Code § 26-21-1(c) ("The Legislature enacts a judicial by-pass procedure for the purposes of meeting the Constitutional standard … ."); Ala. Code § 26-21-1(f) ("It is not the Legislature's intent to place an undue burden on the minor's otherwise legal right to make a decision on whether to obtain an abortion of her unborn child … .").[9] The court addresses the benefits of the Act, as described by the Legislature, *infra*.

---

[9] As discussed *supra* and in *RHS I*, 204 F. Supp. 3d at 1307-08, the plaintiffs challenge certain aspects of Alabama's 2014 amendments to its judicial bypass laws, which the court refers to throughout this litigation as the "Act." The Legislature's findings of fact with respect to the Act are codified at Ala. Code § 26-21-1(c) – (f), and the undersigned considers those findings in more detail in the body of this decision below.

The Legislature's findings of fact regarding Alabama's parental consent law – which is not the subject of this litigation – are also found at § 26-21-1. Those findings are as follows:

It is the intent of the Legislature in enacting this parental consent provision to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure and preserving it as a viable social unit, and (3) protecting the rights of parents to rear children who are members of their household.

The Legislature finds as fact that: (1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional, and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician's exercise of his or her best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention after her abortion. The Legislature further finds that parental consultation is usually desirable and in the best interests of the minor.

The court is also mindful, in considering the State interests articulated by the Legislature, that even if those interests are legitimate, the means chosen to further such interests are not constitutionally permissible if they place a substantial obstacle in the path of a woman's choice. *Casey*, 505 U.S. at 877 ("A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends."). Indeed, the undue burden test itself embodies a balance between competing interests; it was expressly framed by the Supreme Court to accommodate the State's interest in protecting unborn life while also protecting a woman's right to choose. *Id.* at 878 ("To protect the central right recognized by *Roe v. Wade* while at the same time accommodating the State's profound interest in

---

Ala. Code 26-21-1(a) – (b). The court does not consider these legislative findings in this opinion, as they are solely related to Alabama's parental consent law, and they are set out separately from the Legislature's findings with regard to the judicial bypass statutes. Also, some of the Legislature's findings regarding the parental consent law are at seemingly at odds with its findings about judicial bypass. For example, the Legislature's findings implying that minors are *per se* immature and which express a preference for parental involvement in a minor's abortion decision are irreconcilable with a minor's right to a judicial bypass, which is designed to allow a minor to circumvent a state's parental consent requirement as well as her parent's or guardian's wishes. Indeed, a bypass option guarantees the minor the right to attempt to show the bypass court that she is not *per se* immature, but instead sufficiently mature in fact to make an abortion decision. *See Akron II*, 497 U.S. at 511-13 (a minor is entitled to an opportunity to demonstrate to a bypass court that she is mature enough to make an informed abortion decision "without regard to her parents' wishes"); *c.f.*, Ala. Code § 26-21-1(a) – (b), § 26-21-1(c) – (f).

potential life, we will employ the undue burden analysis as explained in this opinion. An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability."); *see also id*. at 876 ("In our view, the undue burden standard is the appropriate means of reconciling the State's interest with the woman's constitutionally protected liberty.").

Thus, while the State's legitimate interests and the Act's benefits are considered by the court below, these are not alone dispositive – a statute that restricts abortion access and that is justified by a legitimate State interest will fail constitutional scrutiny if it poses a "substantial obstacle" to a minor's liberty interest in reaching an abortion decision through a judicial bypass. *Casey*, 505 U.S. at 877. "Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause." *Id.* at 874 (citations omitted).

With the foregoing in mind, the court turns to the merits of the motions for judgment on the pleadings as to plaintiffs' *Bellotti II* claims.

### 1. Parental Involvement as Parties to the Bypass – Alabama Code § 26-21-4(l)

The Act provides a mechanism for a minor petitioner's parent, parents or legal guardian to participate as parties to the bypass proceeding.

> Although the court shall not be required or permitted to contact the minor's parent, parents, or legal guardian, in the event that the minor's parent, parents, or legal guardian are otherwise aware of the by-pass proceeding, they, he, or she shall be given notice of and be permitted to participate in the proceeding and be represented by counsel with all of the rights and obligations of any party to the proceeding.

Ala. Code § 26-21-4(l).[10]

The controlling opinion in *Bellotti II* is clear that "every pregnant minor is entitled in the first instance to go directly to the court for a judicial determination without prior parental notice, consultation, or consent[.]" *Bellotti II*, 443 U.S. at 649. As the Court noted, "'there are parents who would obstruct, and perhaps altogether prevent, the minor's right to go to court.' ... There is no reason to believe that this would be so in the majority of cases where consent is withheld. But many parents hold strong views on the subject of abortion, and young pregnant minors, especially those living at home, are particularly vulnerable to their parents' efforts to obstruct both an abortion and their access to court." *Id.* at 647 (citation omitted). *See also Indiana Planned Parenthood Affiliates Ass'n, Inc. v. Pearson*, 716 F.2d 1127, 1132 (7th Cir. 1983) ("Unemancipated minors are fundamentally different from adults because they are financially dependent upon their parents and have numerous legal incapacities. In addition, parents have considerable leeway to impose punishment upon their children for disobedience. Because of this, minors often have no choice but to comply with parental directives.").[11] The requirement of the Act that parents

---

[10] The affected group as to § 26-21-4(l) is all minor petitioners whose parent(s) or legal guardian are joined as parties to the minor's bypass proceeding.

[11] These observations are borne out by a number of Alabama bypass cases. *See, e.g.*, *In re Anonymous*, 964 So. 2d 1239, 1243 (Ala. Civ. App. 2007) (the minor testified that "if she were forced to tell her mother and stepfather that she was pregnant, they would 'kick her out' and she would have nowhere to go."); *In re Anonymous*, 782 So. 2d 791, 791-92 (Ala. Civ. App. 2000) (the minor "stated that her father had told her that if she ever came home pregnant he would kill her"; while "she did not believe he meant this literally," "she believed her parents would whip her and then kick her out of the house if she told them she was pregnant."); *Ex parte Anonymous*, 595 So. 2d 497, 498 (Ala. 1992) (the minor believed that "she might be forced to leave home as a consequence" of her pregnancy.); *Matter of Anonymous*, 628 So. 2d 854, 854-55 (Ala. Civ. App. 1993) (the minor testified that "she cannot discuss this matter with her paternal

who become aware of a judicial bypass proceeding be given formal notice of that proceeding, and permitted to participate in it and be represented by counsel as parties, facilitates and, indeed, invites such obstruction, and oversteps the bounds of parental involvement set by *Bellotti II*.

Those bounds are clearly drawn. If a minor "satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent." *Id.* If the minor "fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests." *Id.* at 647-8. "If, all things considered, the court determines that an abortion is in the minor's best interests, she is entitled to court authorization without any parental involvement." *Id.* at 648. Only if the court concludes that an immature minor's best interests would be served by denial of the abortion request may the court choose to defer decision until there is parental consultation, in which the court may participate. *Id.* As the *Bellotti II* Court was at pains to emphasize, "this is the full extent to which parental involvement may be required." *Bellotti II*, 443 U.S. at 648; *see also Akron II*, 497 U.S at 511 (a minor petitioner is entitled to show that she is sufficiently mature and informed to make an abortion decision "without regard to her parents' wishes"); *Zbaraz v. Hartigan*, 763 F.2d 1532, 1536 (7th Cir. 1985), *aff'd,* 484 U.S. 171 (1987) ("[A] mature minor or an immature minor in whose

---

grandparents, who have custody of her, because they consider abortion to be murder, and they would throw her out of the house.").

best interest it is to have an abortion has a constitutional right to have an abortion without notifying her parents.") (citing *Matheson*, 450 U.S. at 420 (Powell, J., concurring); *Bellotti II*, 443 U.S. at 647).

Accordingly, "every minor must have the opportunity – if she so desires – to go directly to a court without first consulting or notifying her parents." *Bellotti II*, 443 U.S. at 647. The minor is not only protected from parental knowledge of her bypass proceeding, it is also "'parental involvement' that an emancipated or mature minor must have an opportunity to avoid." *Pearson*, 716 F.2d at 1132 (7th Cir. 1983) (citing *Akron I*, 462 U.S. at 427, n. 10). As the *Bellotti II* Court made clear, "'[t]he abortion decision differs in important ways from other decisions that may be made during minority. The need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." *Id.* at 642. "[P]articular sensitivity" is critical because "there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible"; "considering her probable education, employment skills, financial resources, and emotional maturity, unwanted motherhood may be exceptionally burdensome for a minor." *Id*.

By providing a statutory mechanism for some parents or legal guardians to participate as parties to the bypass proceeding – and also to appeal any decision by the bypass court, *see* Ala. Code § 26-21-4(n) – the Act eviscerates the judicial bypass mandate of *Bellotti II* as to the minors affected. Thus, § 26-21-4(l) violates both a minor petitioner's procedural and substantive due process rights to access to a constitutional judicial bypass

of Alabama's parental consent law, and it unduly burdens her liberty interests. Under the

strict guidelines of *Bellotti II*, this section of the Act is unconstitutional. *Miller*, 934 F.2d

at 1475 (*Bellotti II* imposes "strict" guidelines for a bypass proceeding).

### 2. Anonymity of the petitioner and confidentiality of bypass proceedings

Plaintiffs also argue that the Act is unconstitutional because it fails to ensure the

affected minors' confidentiality.[12] (Doc. 61). The Act requires that "[a]ll proceedings under

this chapter shall be confidential and anonymous. In all pleadings or court documents, the

minor shall be identified by initials only." Ala. Code § 26-21-4(o). Supplementing and

qualifying these general requirements, Alabama Code § 26-21-4(c) provides, in relevant

part, as follows:

> The minor's identity shall be kept confidential, but her identity may be made
> known to the judge, any guardian ad litem, the district attorney or any
> representative of the district attorney's office of the county where the minor
> is a resident or the county where the abortion is to be performed, any
> appropriate court personnel, any witness who has a need to know the minor's
> identity, or any other person determined by the court who needs to know.
> Any person who is given the identity of the minor shall keep her name
> confidential and shall not give it to any other person, unless otherwise
> ordered by the court.

Ala. Code 26-21-4(c). If the court determines at the initial hearing on the petition that

additional evidence or testimony is necessary, it may adjourn the hearing and "issue

instanter subpoenas or otherwise permit any party or participant in the hearing to bring

---

[12] The affected group as to the challenged portions of §§ 26-21-4 (c), (e), (f), (i), (j) (k), (l), and (n) is all minor petitioners for whom the parent(s) or legal guardian, the DA or his or her representative a, GAL for the unborn child, and any witnesses or others deemed by the court to have a need to know her identity are permitted under the Act to learn about or participate as witnesses or parties in her bypass proceeding, other than those witnesses who are so informed or called to testify by the minor herself.

before the court admissible evidence or testimony either in support of or against the petition." Ala. Code § 26-21-4(f).

As to any appeal of the bypass court's decision, "[a]n expedited confidential and anonymous appeal shall be available to any minor to whom the court denies a waiver of consent, the district attorney's office, and any guardian ad litem,[13] or the parent, parents, or legal guardian of the minor."  Ala. Code § 26-21-4(n). The Act further provides that

> Records and information involving court proceedings conducted pursuant to [the Act] shall be confidential and shall not be disclosed other than to the minor, her attorney, and necessary court personnel…. Any person who shall disclose any records or information made confidential pursuant to [the foregoing sentence] shall be guilty of a Class C misdemeanor.

Ala. Code § 26-21-8(a, b).  The defendants assert that these provisions, and particularly the fact that Alabama law criminalizes disclosure of information regarding a bypass proceeding, provide reasonable assurance of confidentiality. (Doc. 63).

Under *Bellotti II*, a minor is entitled to an "anonymous" judicial bypass to a state's parental consent law.  *Bellotti II*, 443 U.S. at 644; *see also Akron II*, 497 U.S. at 512 (the bypass procedure "must insure the minor's anonymity"). Eleven years after *Bellotti II*, the

---

[13] The Act allows a GAL for the fetus to appeal from a bypass order. However, in 1998, the Alabama Supreme Court decided that a GAL for an unborn child may not constitutionally appeal an order granting a minor's request to have an abortion. *See In re Anonymous*, 720 So. 2d 497, 499-500 (Ala. 1998) ("Based upon well-established Alabama caselaw, reaffirmed by this Court on July 31, 1998, we must presume that in 1987, when it enacted Ala. Code 1975, § 26-21-1 et seq. (the Parental Consent Statute), the Alabama Legislature knew the limit of its constitutional authority. . . . The Legislature, as the Court of Civil Appeals correctly noted, did not provide a right to appeal from an order *granting* a petition for a waiver of parental consent. We can conclude only that the Legislature understood its subordination to the Supremacy Clause of the United States Constitution and that it recognized that, pursuant to the United States Supreme Court's decision in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), it could not constitutionally confer upon a nonviable fetus the right to appeal, through a guardian ad litem, an order granting a minor's request to have an abortion.") (internal citations omitted). No party has cited this case to the court for this proposition. However, the Alabama Supreme Court opinion remains in effect and constitutes binding precedent.

plurality opinion in *Akron II* determined that "anonymity," as used by the *Bellotti II* plurality, did not mean "complete anonymity," and that a bypass statute is facially constitutional if it "takes reasonable steps to prevent the public from learning of the minor's identity." *Id.* at 513. The Court distinguished between "complete anonymity" and the practical need to disclose a minor petitioner's identity to court personnel "for administrative purposes, not for public disclosure." *Id.* In assessing the constitutionality of the bypass law at issue in *Akron II*, which criminalized disclosure of information related to the bypass petitioner or proceeding by court personnel, the Court "refuse[d] to base a decision on the facial validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees." *Id.*

Since *Akron II*, decisions from other courts have provided little in the way of guidance in interpreting the Supreme Court's holding that complete anonymity is not "critical," or in deciding what steps are "reasonable … to prevent the public from learning the minor's identity." *Id. See also, e.g.*, *Miller*, 934 F.2d at 1478 (Georgia law requiring a minor to reveal her full name to court personnel at the time a judicial bypass proceeding is commenced adequately safeguards the minor's "anonymity" because of statutory requirements that "all proceedings be conducted in a manner to protect the minor's anonymity" and "all records be sealed at the inception of the case," as well as Georgia Rules of Juvenile Procedure and Georgia Rules of Appellate Procedure that provide that "the juvenile court must redact the name of the minor throughout the record," "and the appellate court must keep the record confidential and then seal it upon the conclusion of the proceedings") (citations omitted). Moreover, at no point has the word "public" been

clearly defined in the context of a judicial bypass law.[14] Still, it is clear that "confidentiality during and after [a judicial bypass] proceeding is essential to ensure that a minor will not be deterred from exercising her right to a hearing because of fear that her parents may be notified." *Zbaraz*, 763 F.2d at 1542. Again, "[t]he [judicial bypass] proceeding … must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained," *Bellotti II*, 443 U.S. at 644, and "the state must take reasonable steps to prevent the public from learning of the minor's identity." *Miller*, 934 F.2d at 1479.

The Act runs afoul of these essential requirements. As noted above, defendants argue that the statute does more than impose the kind of non-specific confidentiality requirement found insufficient by other federal courts, because Alabama Code § 26-21-8 makes disclosure of information about a judicial bypass proceeding a criminal act. *See Zbaraz*, 763 F.2d at 1543 (the question before the court is "whether the … statute assures a minor's anonymity during the course of the waiver proceedings with sufficient specificity."); *Zbaraz v. Hartigan*, 776 F. Supp. 375, 379 (N.D. Ill. 1991) ("general language stating that proceedings 'shall be confidential' does not sufficiently ensure that a minor's identity will be withheld from the public.") (citing *American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh*, 737 F.2d 283, 297 (3rd Cir.1984), *aff'd* 476 U.S. 747 (1986) (same)); *Jacksonville Clergy Consultation Serv.,*

---

[14] *Akron II* draws a distinction between court personnel and the "public." Defendants contend that the "public" consists of all those who are not made privy to the petitioner's identity and the pendency of judicial bypass proceedings, except those persons who are authorized or permitted access to that information under the Act. As discussed below, this definition sweeps too broadly.

*Inc. v. Martinez*, 696 F. Supp. 1445, 1448 (M.D. Fla. 1988), *order dissolved*, 707 F. Supp. 1301 (M.D. Fla. 1989) ("The common thread running through all of these cases is that in order for a statute to pass constitutional muster the provisions ensuring confidentiality, anonymity and expeditious judicial proceedings must be drafted with specificity and detail."). If § 26-21-8 were read in isolation, defendants' argument might warrant more credence. However, the court must examine the language of the Act – *i.e.,* Alabama Code § 26-21-1 et seq. – as a whole, rather than reviewing only isolated provisions, in order to assess the operation of the sections at issue. *See Commissioner of Internal Revenue v. Engle*, 464 U.S. 206, 223 (1934) (noting that the true meaning of a single section of a statute, however precise its language, cannot be ascertained if it is considered apart from related sections.).

Other provisions of the Act render § 26-21-8 impotent as an assurance of anonymity and confidentiality.  Under the Act, the DA shall be notified and joined as a party, and may designate a representative to participate in a bypass proceeding. *See* Ala. Code § 26-21-4(i). A GAL for the fetus and the minors' parents or legal guardians may also be brought within the universe of persons authorized to learn about the minor's identity and the pendency of her judicial bypass petition, and permitted to participate in the bypass proceeding. Ala. Code §§ 26-21-4 (j), (l). Thus, although § 26-21-8 prohibits and criminalizes disclosure of records and information involving court proceedings under § 26-21-4 other than "to the minor, her attorney, and necessary court personnel," disclosure concerning such proceedings to the office of the DA, to GALs, and to parents or guardians of affected minors clearly is permitted by other sections of the Act. The addition of these

parties to the list of those to whom the petitioner's identity may be disclosed compromises the minor's anonymity to a degree well beyond the scope permitted by *Bellotti II* and any case decided in the intervening four decades.[15] *See* n. 3, *supra* (citing cases).

The Act's provisions allowing parties or the court to investigate, gather evidence, and issue subpoenas, as well as the involvement of witnesses who have the right to participate in the proceedings for the purpose of presenting evidence and requesting delays, also breach the minors' anonymity and the confidentiality of the proceedings. *See* Ala. Code §§ 26-21-4(c), (f). In addition, the Act contains a catch-all exception to § 26-21-8: bypass information and the minor's identity may permissibly be shared with "any appropriate court personnel, any witness who has a need to know the minor's identity, or any other person determined by the court who needs to know. Any person who is given the identity of the minor shall keep her name confidential and shall not give it to any other person, unless otherwise ordered by the court." Ala. Code § 26-21-4(n).  In other words,

---

[15]   Even if the parents or guardian are "otherwise aware" of the bypass proceeding itself pursuant to Alabama Code § 26-21-4(l), they may not be aware, absent their participation as parties, of the evidence a minor will present or the witnesses she will call to establish her maturity or address her best interests. Under *Belotti II*, it is not only the minor's identity, but also the "resolution of the issue" that must remain confidential. *Bellotti II*, 443 U.S. at 644 ("The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained."). Alabama Code §§ 26-21-4(h) requires the minor to provide "probative and admissible evidence" in order to secure the requested relief from the court; she may not rely on "[u]ncorroborated legal conclusions," and, as a result, the minor may have a need to present witnesses to offer testimony. *See, e.g., In re Anonymous*, 888 So. 2d 1265, 1270-71 (Ala. Civ. App. 2004) (witness called to testify by the petitioner). For those parents identified in *Belotti II* as "hold[ing] strong views on the subject of abortion," knowledge concerning the participation of witnesses on behalf of the minor such as siblings or other relatives, clergy, teachers, coaches, or friends may open the door to obstruction of a minor from "both an abortion and [her] access to court," 443 U.S. at 647, through influence on those witnesses. Efforts by persons associated with the bypass proceeding to ascertain or confirm whether parents or guardians are "otherwise aware" of such proceedings for the purpose of implementing the Act's mandate that they must be given notice of and be permitted to participate in the proceeding also may compromise a minor's anonymity. Ala. Code § 26-21-4(l).

the bypass court acts wholly within its statutory discretion in authorizing disclosure to an unlimited number of people, including witnesses who may be called by the DA, the GAL, or a parent or guardian to offer "admissible evidence or testimony either in support of or against the petition."[16] Ala. Code § 26-21-4(f). Of course, in order to possess relevant information on the subject of the minor's maturity, whether she is sufficiently informed about the abortion decision, and her best interests, such witnesses almost inevitably would have to be relatives, friends or acquaintances of the petitioner herself – precisely those members of "the public" whom she is most likely not to want informed about her decision, and whose opposition to the petition could become coercive. Further, those who are privy to the protected information, although required to treat it as confidential themselves without further authorization, may disclose that information if the court so directs. Ala. Code § 26-21-4(c).

This is a very far cry from the strictly limited disclosure to court personnel for administrative purposes that was approved by *Akron II*. On the contrary, the Act "raise[s] the specter of public exposure and harassment of women who choose to exercise their

---

[16]  It is no answer to this finding that the bypass court might in some circumstances choose not to appoint a GAL or permit additional witnesses, or that otherwise aware parent(s) or guardians may not ask to be joined as parties – or that some (although not all) of these persons cannot be assumed to be likely to breach the minor's confidentiality unlawfully because they are employees or officers of the court. *See, e.g.*, Doc. 63 at 19 (arguing that, "on a facial challenge, a court should not strike down a law on the unknowable premise that a state employee may unlawfully disclose confidential information. [*Akron II*,] 497 U.S. 502, 513 (1990). Nothing in *Akron II* suggests that same logic does not extend to any other individuals who may learn of the petition by participating in the hearing."). The point is that these individuals themselves *may* become participants in the bypass proceeding, and, if they do, they are granted authority by the Act to know both the petitioner's identity and information concerning the proceeding – and, under some circumstances, even to share it lawfully. The possibility of *unlawful* disclosure by, for example, parents, guardians, employees of the DA, or witnesses who are not officers or employees of the court only exacerbates the confidentiality problem.

personal, intensely private, right, with their physician, to end a pregnancy. Thus, [it poses] an unacceptable danger of deterring the exercise of that right, and must be invalidated." *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 767-68 (1986), *overruled on other grounds by Casey*, 505 U.S. 833; *see also id*. at 766 ("The decision to terminate a pregnancy is an intensely private one that must be protected in a way that assures anonymity. … 'It is inherent in the right to make the abortion decision that the right may be exercised without public scrutiny and in defiance of the contrary opinion of the sovereign or other third parties.'… A woman and her physician will necessarily be more reluctant to choose an abortion if there exists a possibility that her decision and her identity will become known publicly.").

*Bellotti II* and *Akron II* mandate "reasonable" efforts to ensure the anonymity of the petitioner and confidentiality of the bypass proceedings. The Act goes well beyond reasonable and permissible disclosure, creating a statutory scheme that not only fails to assure a petitioner that her anonymity will be protected, but actually authorizes disclosure without any limits at all, save only for the discretion of the bypass judge. The court presumes that judges will act lawfully and prudently in the exercise of their duties. But the unfettered authority granted by the Act goes too far, and it violates a minor's constitutional right to an anonymous and confidential judicial bypass to Alabama's parental consent law.

### 3.     Benefits and burdens of the Act

In reaching the foregoing conclusions, the court has carefully considered the benefits conferred by the provisions in question together with the burdens they impose on abortion access, as directed by the Court in *Hellerstedt*, 136 S. Ct. at 2309. Defendants

maintain that the purpose of the Act is "to provide Alabama bypass courts 'guidance in determining appropriate procedure and evidence' – so that the courts will have 'sufficient evidence and information' to 'make informed and proper decisions.'" (Doc. 63 at 4-5) (citing Ala. Code § 26-21-1(c), (d)). "As a secondary goal, [the Act] also facilitate[s] the provision of 'guidance and assistance' to the girls who are attempting to make such a momentous decision on their own." (Doc. 63 at 5) (citing Ala. Code § 26-21-1(f)).

As to the latter, defendants do not indicate specifically how the challenged provisions of the Act offer pregnant minors any kind of guidance or assistance. The court can only speculate that defendants might be claiming some incidental – and unexplained – salutary effect emanating from the bypass proceeding itself, perhaps resulting from the minor's being cross-examined by the DA or the GAL for the fetus, or from her being privy to the testimony of a parent or a witness for an opposing party. But the Act itself is silent on this subject; it offers no clue at all as to how the challenged provisions might be designed to serve the Legislature's goal of "provid[ing] guidance and assistance to minors who find themselves in the unfortunate position of having to make [an abortion] decision[.]" Ala. Code § 26-21-1(f). It is true that states may require – as the Supreme Court made clear in *Casey* – that a physician or a qualified non-physician be tasked with apprising the minor of truthful, non-misleading information concerning the nature of the procedure, the attendant health risks and those of childbirth, the probable gestational age of the fetus, and the assistance available should the minor petitioner decide to carry the pregnancy to full term. *See Casey*, 505 U.S. 833, 881-883. But because the Act itself notes no overtly educational purpose for the participation of the parents or guardian, the DA, the GAL for

the unborn child, or any subpoenaed witnesses in the judicial bypass proceeding, the court must decline to infer one.

Indeed, the bypass proceeding would be redundant as a tool for the counseling of the minor; the petitioner herself is charged by statute, in an unchallenged portion of the Act, with providing the court "probative and admissible evidence" that she has been informed of and understands the medical procedure and its consequences, and that she has been counseled by a "qualified person" as to the alternatives to abortion. Ala. Code § 26-21-4(h). She must "explain each of the foregoing to the court," and the court "shall be satisfied that she is making an informed judgment and shall document its finding in its order." *Id*. The petitioner also must present "such additional probative evidence" to the court of her maturity as will demonstrate that she has "sufficient experience with and understanding of life" to enable her to make mature and informed decisions. *Id*. These are prerequisites to the minor's obtaining relief. Charging the bypass court itself with the responsibility of providing the petitioner with an appropriate education concerning her choice via the addition of the parties and witnesses permitted by the Act – after the minor has already received expert counseling and has presented evidence to that effect, and has also offered proof of her achievement of the requisite level of experience with and understanding of life – would be duplicative of these mandates.

Nor is it clear that a parent, guardian, DA, GAL, or witness would ordinarily represent a "qualified person" capable of educating the minor concerning the health risks, alternatives to abortion, and other factors that are material to an abortion decision. *See* Ala. Code § 26-21-4(h) (requiring evidence of counseling by a "qualified person" concerning

the alternatives to abortion); *Akron II*, 497 U.S. at 518 (explaining that "'[t]he State's interest is in ensuring that the woman's consent is informed and unpressured; the critical factor is whether she obtains the necessary information and counseling from a *qualified person*, not the identity of the person from whom she obtains it.'") (emphasis added) (citing *Akron I*, 462 U.S. at 448). Finally, the bypass court is hardly the appropriate setting for such counseling, in any event; it is neither a physician's office, nor a classroom, nor any other such place of instruction or guidance. The only proper purpose of the bypass proceeding under *Belotti II* is the adjudication of the minor's maturity and whether she is well enough informed to make the abortion decision on her own, or, failing that, where her best interests lie. *Bellotti II*, 443 U.S. at 647-48; *see also Zbaraz*, 776 F. Supp. at 383 ("The only issues which may be addressed in the bypass procedure, including any appeal, are whether the young woman has sufficient maturity to decide to have an abortion independently or, if she is immature, what would be in her best interests.") (citing *Bellotti II,* 443 U.S. at 643-44; *Akron II,* 497 U.S. at 511-14).

Absent the Legislature's explicit expression of the intent to provide the minor guidance and assistance by means of the challenged portions of the Act, the court turns to the consideration of those provisions as they relate to the Legislature's stated objective of requiring judges in bypass proceedings "[to] be provided with sufficient evidence and information upon which they may make informed and proper decisions." Ala. Code § 26-21-1(d). In this regard, the Act says specifically that the DA, the GAL, and the witnesses called by the parties should present evidence for the purpose of assisting the court in making an informed decision and in doing substantial justice. *See* Ala. Code § 26-21-4(i)

(charging the DA with "present[ing] evidence for the purpose of providing the court with a sufficient record upon which to make an informed decision and to do substantial justice."); Ala. Code § 26-21-4(j) (giving the GAL for the fetus "the responsibility of assisting and advising the court so the court may make an informed decision and do substantial justice."); Ala. Code § 26-21-4(k) (permitting the DA and any other party "to obtain evidence, subpoena witnesses, or to obtain and present any evidence or information which will be necessary and appropriate for the court to make an informed decision.").

Notably, however, no such reason is given for the participation of parents or guardians who are "otherwise aware" of the bypass proceeding. Ala. Code § 26-21-4(l). Further, although the Act indicates generally that the DA, the GAL for the fetus, and the witnesses called by these parties should assist the court in making an informed decision and in doing substantial justice, it says little else on the subject. For example, it makes no finding that judicial bypass proceedings previously undertaken under Alabama's former bypass law – "which was enacted in 1987 and remained substantively unchanged for 27 years," and in which "the only necessary party to the bypass proceedings identified by statute was the minor petitioner," *RHS I*, 204 F. Supp. 3d at 1307 – were in fact deficient in developing the evidence necessary for bypass courts to decide the issues properly before them. Also, the necessity for these additional persons to help the court in making an informed and proper decision is called into question by the fact that some bypass proceedings will still go forward under the Act without any of the new participants; the statute permits, but does not mandate, the involvement of parents or a guardian who do not otherwise know of the petition, the GAL for the unborn child, and other unspecified

additional witnesses. One must assume that the Legislature is satisfied that such petitions will proceed with sufficient evidence for the judge to adjudicate properly even without the required participation of these individuals.

In addition, the Act specifically directs the bypass court to deny an inadequately supported petition. *See* Ala. Code § 26-21-4(h) ("It shall not be sufficient that the court find the minor mature because she has requested relief from the court, but rather the totality of the evidence must be probative and of such weight to prove that the minor is mature and well-informed enough to make the abortion decision on her own, or that the performance of the abortion will be in her best interest. Uncorroborated legal conclusions by the minor shall not be sufficient to support a determination by the court to grant her petition. In the event of a denial of the petition by the court, the minor may re-file the petition once for a de novo hearing with the court."); *see also Bellotti II*, 443 U.S. at 648 ("If … the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation."); *Ex parte Anonymous*, 889 So. 2d 525, 525 (Ala. 2003) ("The burden of proof with respect to both the maturity/well-informed prong and the best-interest prong of § 26-21-4(f), Ala. Code 1975, lies with the minor."). And, indeed, the Alabama courts traditionally have not hesitated to deny a waiver when the minor failed to meet her burden of proof. *See, e.g., In re Anonymous*, 964 So. 2d 1239, 1243 (Ala. Civ. App. 2007) (affirming a bypass court's decision to deny a waiver where the minor presented minimal evidence to satisfy her burden of proof); *Ex parte Anonymous*, 889 So. 2d at 525-26 (concluding that the minor failed to carry her burden of proof as to the best interest prong); *In re Anonymous*, 833 So. 2d 75, 78 (Ala. Civ. App. 2002)

(deciding that the trial court did not err in finding that the minor failed to meet her burden of proof as to either prong of § 26-21-4(f)). The appellate courts have also felt free to remand for additional findings. *See In re Anonymous*, 956 So. 2d 427, 428 (Ala. Civ. App. 2006) (remanding a case to the juvenile court "'to detail sufficiently the basis for appropriate findings [and conclusions] and immediately to conduct such further proceedings, to include taking additional testimony or admitting further evidence, that may be necessary in order to do so.'") (brackets in original) (citation omitted). Thus, the statute itself, the long-standing practice of the Alabama courts, and *Bellotti II* all ensure that any petition which the bypass court finds legally unsupported simply will not prevail.

Finally, the court has located *no other state* which either mandates or permits participation by a parent or guardian, the DA, a GAL for the fetus, or witnesses (other than those called by the minor) in bypass proceedings for the purpose of providing the court with assistance in arriving at informed and proper decisions – or, indeed, for any other purpose. Some states, either by choice or by court order, do not mandate parental consent or notification at all, and therefore have no bypass procedures.[17] The 37 states that do have

---

[17] These jurisdictions do not currently have parental consent or notification laws and, therefore, do not have judicial bypass procedures: Connecticut, District of Columbia, Hawaii, New Mexico, New York, Oregon, Vermont, and Washington. In addition, the following states have enacted parental consent or notification laws and judicial bypass provisions, but are enjoined from enforcing them by state or federal courts: Alaska (parental notification and judicial bypass law, AS §§18.16.010, 18.16.020, 18.16.030, 18.16.040, declared unconstitutional in *Planned Parenthood of The Great Nw. v. State*, 375 P.3d 1122 (Alaska 2016)); California (parental consent and judicial bypass statute, Cal. Health & Safety Code § 123450, declared unconstitutional in *American Academy of Pediatrics v. Lungren*, 16 Cal. 4th 307, 66 Cal.Rptr.2d 210 (Cal. 1997)); Colorado (parental notification and judicial bypass statute, Colo. Rev. Stat. Ann. § 12-37.5-107, declared unconstitutional in Planned Parenthood of Rocky Mountains Servs. Corp. v. Owens, 107 F. Supp. 2d 1271, 1285 (D. Colo. 2000), aff'd, 287 F.3d 910 (10th Cir. 2002)); Nevada (parental notification and judicial bypass statute, NRS 442.255, 442.2555, 442.257, 442.253(1)(c), declared unconstitutional in *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991)); and New Jersey (parental notification and judicial bypass statute, N.J.S.A. 9:17A-1; §§ 1.2 et seq., declared unconstitutional in *Planned Parenthood of Cent. New Jersey v.*

bypass statutes of some kind simply do not authorize such participation.[18] Indeed, some

states go so far as affirmatively to *prohibit* participation by parties other than the minor and

her representatives. *See, e.g.,* Kan. Stat. Ann. § 65-6705(c) (bypass statute providing that

"[a]ll persons shall be excluded from [bypass] hearings … except the minor, her attorney

and such other persons whose presence is specifically requested by the applicant or her

attorney."); Neb. Rev. Stat. Ann. § 71-6903 (bypass statute requiring that "[o]nly the

pregnant woman, the pregnant woman's guardian ad litem, the pregnant woman's attorney,

and a person whose presence is specifically requested by the pregnant woman or the

pregnant woman's attorney may attend the hearing on the petition."). It would strain

credulity to conclude that the bypass judges and other authorities in every other state that

---

*Farmer*, 165 N.J. 609, 612, 762 A.2d 620, 621 (N. J. 2000)). The enjoined Alaska, California, Colorado, Nevada, and New Jersey bypass statutes did not permit any additional persons to participate in the bypass proceedings.

[18] These states and bypass statutes are as follows: Ariz. Rev. Stat. Ann. § 36-2152 (Arizona); Ark. Code Ann. § 20-16-809 (Arkansas); Del. Code Ann. tit. 24, § 1784 (Delaware); Fla. Stat. Ann. § 390.01114 (Florida); Ga. Code Ann. § 15-11-684 (Georgia); Idaho Code Ann. § 18-609A (Idaho); 750 Ill. Comp. Stat. Ann. 70/25 (Illinois); Ind. Code Ann. § 16-34-2-4 (Indiana); Iowa Code Ann. § 135L.3 (Iowa); Kan. Stat. Ann. § 65-6705(c) (Kansas); Ky. Rev. Stat. Ann. § 311.732 (Kentucky); La. Stat. Ann. § 40:1061.14, amended by 2017 La. Sess. Law Serv. Act 165 (S.B. 111) (Louisiana); 22 M.R.S.A. §1597-A (Maine); Md. Code Ann., Health-Gen. § 20-103 (Maryland); Mass. Gen. Laws Ann. ch. 112, § 12S (Massachusetts); Mich. Comp. Laws Ann. § 722.904 (Michigan); Minn. Stat. Ann. § 144.343 (Minnesota); Miss. Code. Ann. § 41-41-55 (Mississippi); Mo. Ann. Stat. § 188.028 (Missouri); Mont. Code Ann. § 50-20-509 (Montana); Neb. Rev. Stat. Ann. § 71-6903 (Nebraska); N.H. Rev. Stat. Ann. § 132:34 (New Hampshire); N.C. Gen. Stat. Ann. § 90-21.8 (North Carolina); N.D. Cent. Code Ann. § 14-02.1-03.1 (North Dakota); Ohio Rev. Code Ann. § 2151.85 (Ohio); Okla. Stat. Ann. tit. 63, § 1-740.3 (Oklahoma); 18 Pa. C.S.A. § 3206 (Pennsylvania); R.I. Gen. Laws § 23-4.7-6 (Rhode Island); S.C. Code Ann. § 44-41-32 (South Carolina); S.D. Codified Laws § 34-23A-7; (South Dakota); Tenn. Code Ann. § 37-10-304 (Tennessee); Tex. Fam. Code Ann. § 33.003 (Texas); Utah Code Ann. § 76-7-304.5 (Utah); Va. Code Ann. § 16.1-241 (Virginia); W. Va. Code Ann. § 16-2F-4 (West Virginia); Wis. Stat. Ann. § 48.257 (Wisconsin); and Wyo. Stat. Ann. § 35-6-118 (Wyoming). Maine's statute allows a minor to obtain an abortion if she consents and undergoes counseling, or receives consent from a parent or adult family member, or secures a court order from a probate or state court. 22 M.R.S.A. §1597-A. Maryland's statute provides for a physician bypass rather than a judicial bypass. Md. Code Ann., Health-Gen. § 20-103.

has a bypass statute are unable to make informed decisions and do substantial justice on the basis of their exclusively *ex parte* proceedings, and this court declines to do so.

Accordingly, the State's interest in the bypass court's having sufficient evidence and information upon which to make informed and proper decisions, Ala. Code § 26-21-1(d), clearly is still well-served under the Act, even absent additional testimony or advocacy offered by participants other than the minor.[19] And, even if in some way this state

---

[19] The court notes that the Legislature made no finding that the Act is designed to advance any state interest in creating an *adversarial* bypass proceeding – that is, an interest in requiring either state-facilitated or state-mandated opposition to the minor's petition by the DA or other parties. And, indeed, defendants appear implicitly to disclaim such an interest. They maintain that the DA, for example, cannot be assumed to be the minor's adversary; instead, they argue that he or she acts merely as "a neutral assistant to the court, free to take any position (or none at all)." (Doc. 63 at 5). Indeed, to the defendants, the DA is present at the bypass proceeding merely to provide "additional viewpoints." *Id.* "In truth," they say, "a district attorney's appearance is not materially different from that of other necessary court personnel like the bailiff or court reporter." (Doc. 31 at 42). The DA "could remain neutral; he could support the petition; he could ask numerous questions; he could ask none at all." (Doc. 31 at 26).

However, this court cannot endorse quite so anodyne a description of the DA's role, which the language of the Act itself calls into question. The Act mandates that the DA "shall participate as an advocate for the state to examine the petitioner and any witnesses[.]" Ala. Code § 26-21-4(i). The Legislature found that "it is the interest of the State of Alabama to not only establish and protect the rights of the minor mother, but also to protect the state's public policy to protect unborn life[.]" Ala. Code § 26-21-1(d). The rights of the minor granted by the Act are to "seek permission to have an abortion without her parent's consent by petitioning a court," Ala. Code § 26-21-1(c), and "to be represented by an attorney and that if she is unable to pay for the services of an attorney one will be appointed for her." Ala. Code § 26-21-4(b). Thus, the Act plausibly may be read to say that the DA acts within the scope of the Act by safeguarding the two codified process "rights" of the minor petitioner – that is, her right to file a bypass petition and her right to court-appointed counsel – and that the DA otherwise must advocate in favor of Alabama's policy of protecting unborn life, a responsibility that necessarily is in conflict with the minor's purpose for seeking a judicial bypass. In short, it is not unreasonable for a DA to assume that he or she is required to oppose the merits of bypass petitions as a matter of law.

This seems to have been the conclusion of the DA in the recent case of *Matter of Anonymous*, __ So. 3d __, 2017 WL 2963002, at *2 (Ala. Civ. App. July 12, 2017), the first case known to the court to be decided under the Act. In that case, the DA opposed, and thereafter appealed, a juvenile court's order permitting a 12-year-old minor to bypass the parental consent requirement where her pregnancy was the result of repeated rape by an adult relative, she did not know her father and his whereabouts were unknown, the rape had occurred while the minor was in the mother's custody, the minor filed her bypass petition while in the custody of the Alabama Department of Human Resources ("DHR") based on reports of physical abuse at the hands of her mother, such abuse had resulted in the minor's removal from the mother's custody on five occasions, and the minor had "no familial support." *Id.* at *4. The DA appeared in the bypass

interest could plausibly be said to be incrementally better served by the addition of the new

Alabama participants, the benefit of the Act is not outweighed by the burden it imposes.

---

proceeding pursuant to Ala. Code § 26-21-4(i), and appealed that court's ruling in favor of the minor under Ala. Code § 26-21-4(n). *Id.* Although the DA represented to the court that "'[t]he District Attorney is neither an advocate for or against the granting of consent, but rather serves to protect the process,'" *id.* at *2, members of the DA's office appeared and examined witnesses at the trial, *id.*, and the DA urged the Alabama Court of Civil Appeals to conclude that the minor was too immature to make an informed decision and that there was no evidence that the abortion would be in the minor's best interest. *Id.* at *3. The Court observed that the DA only made one procedural objection to the bypass court's "trial" and that the DA also challenged the *substance* and the *merits* of the bypass court's decision to grant the minor's petition. *Id.* at 2-3. Thus, under the Act, bypass petitioners could well face a formidable antagonist in their proceedings: the chief prosecuting authority of the county in which the minor resides, empowered by the Act to represent the state's public policy to protect unborn life, and backed by substantial state resources.

Further, there is no doubt that the GAL for the unborn child *must* oppose the petition. *See, e.g., Ex parte Anonymous*, 810 So. 2d 786, 789 (Ala. 2001) (the GAL for the fetus "subjected [the minor] to a probing cross-examination"); *Ex parte Anonymous*, 889 So. 2d 525, 527 (Ala. 2003) (a GAL was appointed "'to represent the silent voice in this case.'"). *See generally* "In the Matter of Anonymous, A Minor:  Fetal Protection in Hearings to Waive Parental Consent for Abortion," Helena Silverstein, *Cornell Journal of Law and Public Policy* (Vol. 11, Fall 2001), pp. 69-111.  In addition, the parent or guardian – precisely the person whose opprobrium the minor is attempting to avoid by seeking a bypass – is reasonably likely to do the same.

As the *Matter of Anonymous* case illustrates, the admission of these new participants to the bypass proceeding appears to stand on its head the well-established view of the Alabama courts, before the Act was passed, that bypass proceedings are "not only nonadversarial in nature," but also are proceedings which "specifically den[y] those persons who arguably are interested in the outcome—i.e., the minor's parents and other family members—the right to appear and be heard." *Ex parte Anonymous*, 806 So. 2d 1269, 1276 (Ala. 2001). Indeed, the Alabama Supreme Court noted, "the mandated secrecy of the hearing prevents anyone, at least in theory, from opposing the minor." *Id.* Because of the greater difficulty of rendering opinions "in such unilateral proceedings," the court found "a perceptive, intuitive, and discerning trial judge, as well as his or her specific factual findings" to be "arguably more necessary than in other cases where opposing advocacy ultimately reveals the facts" – one factor in the court's decision to permit the use of an *ore tenus* standard of review for such proceedings. *Id.*

While this court does not, in this opinion, reach plaintiff's argument that *Bellotti II* does not permit a state to create an adversarial bypass proceeding, *see* n. 24, *infra*, it notes that at least one other court has found such a proceeding to be constitutionally impermissible. *See Zbaraz*, 776 F. Supp. at 382–83 ("The *Bellotti II* plurality, in mandating that a pregnant minor should be given an alternative procedure to seeking parental approval prior to having an abortion, apparently did not contemplate that such a procedure would be a formal adversarial proceeding. 443 U.S. at 643 n. 22, 99 S.Ct. at 3048 n. 22 ('... [M]uch can be said for employing procedures and a forum less formal than those associated with a court of general jurisdiction.'). … Nor would an adversary proceeding be consistent with the purpose or nature of the hearing.") (some citations omitted). As the Sixth Circuit has said, "a state may not erect procedural hurdles in the path of a woman seeking an abortion simply to make it more difficult for her to obtain an abortion." *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 461 (6th Cir. 1999).

Finally, for the reasons discussed above, the provisions which require or permit notice to, and the participation of, the minor's parents or legal guardians, the DA, a GAL for the unborn child, and unspecified witnesses or others who may be subpoenaed or otherwise need to know the minor's identity do not advance the State's express § 26-21-4(k) interest in enacting a constitutional bypass procedure. *See* Ala. Code § 26-21-1(c) ("The Legislature enacts a judicial by-pass procedure for the purposes of meeting the Constitutional standard … ."); Ala. Code § 26-21-1(f) ("It is not the Legislature's intent to place an undue burden on the minor's otherwise legal right to make a decision on whether to obtain an abortion of her unborn child … ."). On the contrary, the Act clearly imposes an undue burden on the rights of the minor participants to whom it applies.[20] Accordingly, even if the challenged portions of the Act addressed above furthered a valid state interest, those provisions have the effect of placing a substantial obstacle in the path of the affected minors' choice and, thus, cannot be considered a permissible means of serving any otherwise legitimate ends. *Hellerstedt*, 136 S. Ct. at 2309.

## III.    Plaintiffs' Informational Privacy Claim – Count II

As the court explained in *RHS I*,

---

[20] Put another way, all minors for whom the portions of the Act discussed *supra* are relevant are unduly burdened by those provisions and, thus, *Casey*'s large fraction test is satisfied. *See Taft*, 468 F.3d at 373 ("[I]n [*Women's Medical Professional Corp. v.] Voinovich* [130 F.3d 187, 201(6th Cir. 1997)], a large fraction was found because all women upon whom the restriction actually operated—i.e., women seeking second-trimester pre-viability abortions—would effectively be barred from exercising their constitutional right to obtain an abortion. *Id.* Other circuits that have applied the large fraction test to facial challenges to abortion regulations have, likewise, only found a large fraction when practically all of the affected women would face a substantial obstacle in obtaining an abortion.") (citations omitted); *see also Taft*, 468 F. 3d at 374 (noting that "the term 'large fraction,' … in a way, is more conceptual than mathematical.").

In Count II, plaintiffs assert that the Act violates a minor petitioner's "right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment ... by permitting" disclosure of "deeply sensitive, private information about the minor to others, including to any potential witnesses." (Doc. 1 at 13). In their brief in support of the motion for a preliminary injunction, plaintiffs clarify that their "informational privacy" claim is derived from the Supreme Court's decision in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), in which the Court "referred broadly to a constitutional privacy interest in avoiding disclosure of personal matters." *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 135, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011) (internal marks and citation omitted). (Doc. 3 at 38-43).

204 F. Supp. 3d at 1335.[21]  The basis for the plaintiffs' informational privacy claim is their contention that a minor petitioner's Fourteenth Amendment due process interest in informational privacy is violated because the challenged portions of the Act "permit[] adverse parties and the court" (Doc. 1 at 13) to disclose to the DA, the GAL, and to potential witnesses that the minor petitioner is pregnant and seeking an abortion by judicial bypass.  (Doc. 61 at 30).

Plaintiffs' informational privacy claim in Count II challenges the provisions of the Act that also are the subject of plaintiffs' Count I challenge under *Bellotti II*: Alabama

---

[21] Six years ago, the Supreme Court remarked that, in addition to *Whalen v. Roe*, 429 U.S. 589 (1977), and *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977), "no … decision has squarely addressed a constitutional right to informational privacy." *Nelson*, 562 U.S. at 146.  The *Nelson* decision, like *Whalen*, assumed without deciding that a plaintiff's challenge to government action would "implicate a privacy interest of constitutional significance." *Id.* (citing *Whalen*, 429 U.S. at 599).  For purposes of ruling on the defendants' motion to dismiss, this court also "assume[d] … that such a right to informational privacy exists and that it is of 'constitutional significance.'" *RHS I*, 204 F. Supp. 3d at 1335 (citing *Nelson*, 562 U.S. at 147).  However, because the court has not here determined whether or not there is a "right" to informational privacy, or that it is of "constitutional significance" as to the material facts of this case, no such assumption is made with regard to the motions for judgment on the pleadings as to the plaintiffs' informational privacy claim. *See RHS I*, 204 F. Supp. 3d at 1335 (noting the debate among courts regarding the existence and scope of an informational privacy interest, and that "some [courts] employ a test balancing the individual's interests against the government's and, at the other end of the spectrum, one court expresses skepticism about the constitutionality of the 'right' to informational privacy").

Code § 26-21-4(c) (providing that the minor petitioner's "identity may be made known to the judge, any guardian ad litem, the district attorney or any representative of the district attorney's office of the county where the minor is a resident or the county where the abortion is to be performed, any appropriate court personnel, any witness who has a need to know the minor's identity, or any other person determined by the court who needs to know … [and anyone] who is given the identity of the minor shall keep her name confidential and shall not give it to any other person, unless otherwise ordered by the court"); § 26-21-4(f) (vesting the bypass court with authority to subpoena witnesses); § 26-21-4(i) (mandating that the bypass court notify the DA and that the DA shall participate as a party to bypass proceedings); § 26-21-4(j) (allowing the bypass court to appoint a GAL for the fetus and joining the GAL as a party to a bypass proceeding); § 26-21-4(k) (permitting any party to a bypass proceeding to present witnesses and evidence "if justice requires"); and § 26-21-4(l) (allowing a minor's parent, parents, or legal guardian to be joined as parties to a bypass proceeding under some circumstances). Plaintiffs seek a declaratory judgment that the aforementioned sections of the Act are unconstitutional because they violate the minor petitioners' Fourteenth Amendment informational privacy interests. However, given the court's holding that these same provisions of the Act are unconstitutional under *Bellotti II*, there is no longer a justiciable case or controversy for Declaratory Judgment Act purposes regarding the informational privacy claim. In the alternative, the court declines to exercise jurisdiction over plaintiffs' petition for a declaratory judgment as to the informational privacy claim.

Article III of the U.S. Constitution "limits the jurisdiction of federal courts to cases and controversies." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (internal quotation marks omitted). An appropriate action for declaratory relief can represent an actual case or controversy under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). A federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). However, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of "actual controversy" – that is, a "substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985); *see also* 28 U.S.C. § 2201. This "continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552; *Hartford Cas. Ins. Co. v. Intrastate Const. Corp.*, 501 F. App'x. 929, 937 (11th Cir. 2012). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 460 n. 10 (1974).

In declaratory judgment actions, the "actual controversy" requirement is imposed both by Article III of the Constitution and the express terms of the Declaratory Judgment Act. *Id.* at 458. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

> The "case or controversy" requirement prevents federal courts from deciding a case on the merits if such a decision could no longer provide "meaningful relief" to the parties. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). Such a case would be moot, and a federal court determination of a moot case would constitute an impermissible advisory opinion. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam).

*Christian Coalition of Alabama v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004).

The court holds, *supra*, that the sections of the Act that are challenged by plaintiffs' informational privacy claim are unconstitutional because they impose an undue burden on a minor's right under *Bellotti II* to a judicial bypass without parental involvement which also ensures the minor's anonymity. Under that holding, the portions of the Act that enable parties other than the minor petitioner to participate in a bypass proceeding and vest the bypass court with the authority to issue subpoenas are unconstitutional and without effect. *See* Ala. Code §§ 26-21-4(c), (f), (i), (j), (k), and (l). In short, the provisions of the Act that are challenged in Count II are no longer at issue, and there is no case or controversy with respect to plaintiffs' informational privacy claim.

Had the court agreed with the plaintiffs and found that the challenged provisions of the Act violate a minor petitioner's right to informational privacy, a declaratory judgment that portions of the Act that are unconstitutional under *Bellotti II* are also unconstitutional for violating a minor petitioner's right to informational privacy would be redundant in terms of the relief that is available to the plaintiffs. Certainly, the challenged provisions of the Act might be unconstitutional under multiple theories; however, in the Declaratory

Judgment Act context, once those provisions are found to be unconstitutional for one reason and are declared to be unenforceable, any analysis of additional constitutional challenges is superfluous and advisory. Because the court cannot provide "meaningful relief" to the plaintiffs, the plaintiffs' informational privacy claim is "moot." *Cole*, 355 F.3d at 1290-91.

Accordingly, because there is no case or controversy with respect to plaintiffs' informational privacy claim, defendants are entitled to judgment on the pleadings as to Count II of the complaint, and this claim is due to be dismissed without prejudice. *See Cummings v. State Farm Mut. Auto. Ins. Co.*, 323 F. App'x 847, 848 (11th Cir. 2009) ("Because the existence of a justiciable controversy is a jurisdictional requirement … the district court lacked jurisdiction and should have dismissed the action without prejudice.") (citing *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Carter v. Telectron, Inc.*, 554 F.2d 1369, 1370 (5th Cir. 1977) (a dismissal for lack of jurisdiction must be without prejudice)).[22]

In the alternative, even assuming *arguendo* that the plaintiffs' informational privacy claim presents an actual case or controversy, the court nonetheless declines to entertain the plaintiffs' petition for declaratory judgment as to this claim. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional

---

[22] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit … as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)).[23] "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," and the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 286-87 (internal quotations omitted). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288. The Eleventh Circuit has held "that the decision to hear a

---

[23] In the Eleventh Circuit, there is a well-established set of guidelines that a court should consider before declining to adjudicate a Declaratory Judgment Act case when there is a related, concurrent state court lawsuit; however, those guidelines are inapplicable to the present case.

> Under the *Wilton–Brillhart* Abstention Doctrine, both the Eleventh Circuit and Supreme Court have cautioned against a district court exercising its jurisdiction over a declaratory judgment action when "another suit is pending in a state court [1] presenting the same issues, [2] not governed by federal law, [3] between the same parties." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173). If a suit presents these issues … the Eleventh Circuit has enumerated nine factors for district courts to consider when determining whether to exercise jurisdiction over such a suit. *Id.* at 1331.

*Gen. Fid. Ins. Co. v. Garrett*, 998 F. Supp. 2d 1312, 1315 (M.D. Ala. 2014). Here, the court does not consider the nine *Ameritas* factors because there is no parallel state court lawsuit and the factors do not offer relevant guidance to the decision at hand. "[T]he Supreme Court in *Wilton* elaborated on the ability of a federal court to decline jurisdiction, implicitly recognizing that a court may decline jurisdiction over declaratory actions even in the absence of parallel state-court proceedings." *ITL Int'l, Inc. v. Ninoshka, S.A.*, 2011 WL 3205590, at *3 (S.D. Fla. 2011) (citing *Wilton*, 515 U.S. at 287–88, 88 n. 2). Such is the case here.

declaratory judgment action is discretionary, that there can be no rigid or mechanical application of the Declaratory Judgment Act, and that a vast spectrum of considerations is available to district courts deciding whether to hear declaratory judgment actions." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1234 (S.D. Ala. 2006) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, 1137-38 (11th Cir. 2005)).

"There must be a sound basis for refusing to adjudicate an actual controversy, for the policy of the [Declaratory Judgment] Act is to enable resolution of active disputes." *Capo, Inc. v. Dioptics Med. Prod., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004).

> "In the exercise of their sound discretion to entertain declaratory actions the district courts may not decline on the basis of whim or personal disinclination; but they may take into consideration the speculativeness of the situation before them and the adequacy of the record for the determination they are called upon to make, as well as other factors[.]"

*Hollis v. Itawamba Cty. Loans*, 657 F.2d 746, 750 (5th Cir. Sep. 30, 1981) (citations omitted). On the other hand, "[a] district court should not grant a declaratory judgment unless such adjudication would serve a useful purpose." *Blue Hill Investments, Ltd. v. Silva*, 2015 WL 9319394, at *3 (S.D. Fla. 2015) (citing *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009) (citing, in turn, *Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971)).

Upon consideration of the *Wilton* factors of "practicality and wise judicial administration," 515 U.S. at 288, the court exercises its discretion and declines to entertain plaintiffs' Declaratory Judgment Act challenge regarding plaintiffs' informational privacy claim. As a practical matter, it is a waste of scarce judicial resources to adjudicate this constitutional challenge to the Act after the court has ruled that the same challenged

provisions of the Act are unconstitutional for a different reason. The plaintiffs have not sought relief under Count II that they do not also seek under Count I of the complaint; thus, there is no danger of denying plaintiffs relief that they could only access through an informational privacy claim.  If, on the other hand, the court ruled in defendants' favor and declared that the Act does not violate plaintiffs' minor patients' informational privacy interests, the declaration would have no practical effect on the outcome of this case. The challenged provisions of the Act are unconstitutional under *Bellotti II*, and an opinion finding in favor of defendants on plaintiffs' informational privacy claim is, in effect, advisory.  Defendants are entitled to judgment on the pleadings, and plaintiffs' informational privacy claim will be dismissed without prejudice.  *See Bacardi USA, Inc. v. Young's Market Co.*, 2016 WL 3087060, at *1, **8-9 (S.D. Fla. 2016) (dismissing without prejudice after finding that the court lacked subject matter jurisdiction over a Declaratory Judgment Act case because there was no justiciable case or controversy and, alternatively, if the court had jurisdiction, it declined to entertain the case for its failure to comport with the purpose of the Declaratory Judgement Act); *see also, e.g.*, *Spectera, Inc. v. Wilson*, 2011 WL 1002699, at *2 (M.D. Ga. 2011) (declining to adjudicate and dismissing a declaratory judgment action without prejudice in favor of parallel state court action); *Allstate Indemn. Co. v. Ivey*, 653 F. Supp. 2d 1215, 1219 (N.D. Ala. 2009) (declining to entertain a declaratory judgment action and dismissing without prejudice and instructing the plaintiff to pursue a remedy in state court); *United Purchasing Ass'n, LLC v. Am. Valve, Inc.*, 2008 WL 2557559, at *2 (M.D. Fla. 2008) (declining a declaratory judgment case and dismissing without prejudice because of a lack of personal jurisdiction over a party and

because of the possibility of inconsistent declarations in light of a similar case pending in a Minnesota state court).

## IV.  Out-of-State Minors – Counts III and IV

In Counts III and IV of plaintiffs' complaint, the plaintiffs aver that the Act "limit[s] judicial bypass to only Alabama residents." (Doc. 1 at 13-14). However, the parties now assert, and the court agrees, that the Act – whether intentionally or unintentionally – exempts out-of-state minors from the parental consent requirement of § 26-21-1 et seq. such that an out-of-state minor needs neither parental consent nor a court order to undergo lawfully an abortion procedure in Alabama. (Doc. 63 at 30; Doc. 66 at 26-27). Defendants correctly argue that the "problem" with Counts III and IV is that plaintiffs misread the Act as imposing a limitation on out-of-state minors' access to an abortion in Alabama. (Doc. 63 at 29-30). Because the basis of plaintiffs' claims regarding out-of-state minors is fundamentally incorrect, defendants are entitled to judgment on the pleadings on Counts III and IV.

## V.  Severability

In *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919 (1983), the Supreme Court stated that unconstitutional provisions in a statute shall be severed if it appears that a legislature would have enacted the constitutional provisions of the statute independently of the unconstitutional provisions. 462 U.S. at 931-32 (citing *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)). "Severability clauses, it is true, do express the enacting legislature's preference for a narrow judicial remedy. As a general matter, [courts] attempt to honor that preference." *Hellerstedt*, 136 S.Ct. at 2319. That said, "a severability clause

is an aid merely; not an inexorable command." *Id.* (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 884-85, n. 49 (1997)).

The Act does not contain a severability clause, but Alabama has a comprehensive severability statute that applies to all Alabama laws. *See* Ala. Code § 1-1-16 ("If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."); *see also State ex rel. Pryor ex rel. Jeffers v. Martin*, 735 So.2d 1156 (Ala. 1999) ("[T]he judiciary's severability power extends only to those cases in which the invalid portions of an act are not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation.")(internal quotation marks and citations omitted). "As the Alabama Supreme Court has explained, 'We regard § 1-1-16 as an expression of legislative intent regarding the general power and duty of the judiciary to sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the same statute.'" *Strange II*, 172 F. Supp. 3d at 1282 (quoting *State ex rel. Pryor v. Martin*, 735 So.2d 1156, 1159 (Ala.1999)). The court is persuaded that the Alabama Legislature has clearly expressed a preference for severability of unconstitutional portions of a statute from the whole, and the intention that the remainder shall be effective absent the unconstitutional portions as long as the extrication will not cause the statute to be meaningless.

As to the Act presently before the court, the Legislature's clear intent was to create a constitutional judicial bypass procedure. *See* Ala. Code § 26-21-1(c) ("The Legislature further finds that the United States Supreme Court has held under certain circumstances a minor may seek permission to have an abortion without her parent's consent by petitioning a court. The Legislature enacts a judicial by-pass procedure for the purposes of meeting the Constitutional standard[.]"); Ala. Code § 26-21-1(f) (It is not the Legislature's intent "to place an undue burden on the minor's otherwise legal right to make a decision on whether to obtain an abortion of her unborn child … .").

Accordingly, the unconstitutional provisions of the Act will be severed from the remainder of the judicial bypass law.

For the reasons discussed in this decision, the following provisions of the Act are unconstitutional in their entirety: Alabama Code § 26-21-4(i) (the participation of the DA as a party), § 26-21-4(j) (the participation of a GAL for the unborn child as a party), and § 26-21-4(l) (the participation of a parent, parents, or legal guardian of the minor petitioner as a party).

Other provisions of the Act are not wholly unconstitutional. The references to the DA, GAL, and other parties will be severed from Alabama Code §§ 26-21-4(c), (e), (f), (k), and (n). The Act's provisions permitting disclosure of a minor petitioner's identity to "any witness who has a need to know the minor's identity[] or any other person determined by the court who needs to know" are too broad to ensure a petitioner's anonymity and, consequently, are unconstitutional; thus, that language will be severed from § 26-21-4(c). The provisions of Alabama Code § 26-21-4(f) that permit the bypass court, if it determines

that "additional evidence or testimony is necessary," to delay the bypass proceeding *sua sponte* to issue "subpoenas … to bring before the court admissible evidence or testimony either in support of or against the petition," does not reasonably safeguard the petitioner's anonymity; it opens the door to the unrestricted notification of the minor's relatives, teachers, friends, acquaintances, and other potential witnesses concerning her bypass proceeding. After severance of the unconstitutional language, Alabama Code § 26-21-4(f) reads:

> Except as otherwise required by the section, this court shall adhere to the Rules of Juvenile Procedure, the Rules of Civil Procedure and Rules of Evidence required of Alabama courts. The court shall assure that it is presented sufficient probative evidence upon which to make its findings, either granting or denying the minor's petition.

*Id.*

Those portions of the Act that are not expressly severed herein will remain substantively unchanged.

## VI.  Injunctive vs. Declaratory Relief

In their complaint and motion for entry of a preliminary injunction, plaintiffs ask this court not only to issue a declaratory judgment but also to grant preliminary and permanent injunctive relief with respect to the unconstitutional provisions of the Act. Recently, another judge of this court addressed whether injunctive relief is ordinarily necessary after a court declares a statute or provision unconstitutional. *See Strange II*, 172 F. Supp. 3d at 1292. The court is persuaded by that decision and finds that the plaintiffs' claims for injunctive relief are moot because of the operation of the declaratory judgment

issued on this date, which renders the unconstitutional provisions of the Act unenforceable. *Id.*

"Generally, the effect of enjoining the enforcement of a statute and declaring it unconstitutional are 'virtually identical.'… '[A] district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary.'" *Id.* (quoting *Wooley v. Maynard*, 430 U.S. 705, 711 (1977)) (brackets in original). This is such a case. The court assumes, barring evidence to the contrary, that the defendants and the State of Alabama will act in accordance with the law and will not seek to enforce those portions of the Act that the court has declared unconstitutional. Should the court's assumption on that point be proven incorrect following the entry of this decision, the parties are granted leave to present such matters and evidence to the court at a later date, and the court expressly retains jurisdiction over the enforcement of this declaratory judgment.

## VII.   Conclusion

For the reasons discussed above, the court finds that certain sections of the 2014 amendments ("the Act") to Alabama's judicial bypass law – a law which has otherwise remained substantively unchanged since its enactment in 1987 – violate a pregnant minor's long-established constitutional right to seek a judicial bypass to a state's parental consent law without the participation of her parent, parents, or legal guardian as parties to the bypass proceeding, and her right to an anonymous judicial bypass hearing. In reaching this conclusion, the court applies 38 years of Supreme Court authority on the subject, as all lower federal courts are bound to do. The court takes the Alabama Legislature at its word

that it intended to enact a constitutional judicial bypass scheme. *See* Ala. Code § 26-1-1(c). However, the judicial bypass option, is rendered meaningless if, as in Alabama's bypass statute – which has no counterpart in any other state bypass law – parents or legal guardians can participate as parties under some circumstances, and if there are insufficient safeguards to protect the anonymity of the minor petitioner. These are cornerstone requirements for a judicial bypass law to pass constitutional scrutiny. Because portions of the Act unduly burden a pregnant minor's right to a constitutionally compliant judicial bypass option – which is required as a matter of law for states, such as Alabama, that restrict a pregnant minor's access to an abortion without the prior consent of her parent(s) or legal guardian – those provisions are unconstitutional.[24]

## VIII.   Order and Declaratory Judgment

Accordingly, it is

**ORDERED** as follows:

1.   Plaintiffs' motion for judgment on the pleadings (Doc. 60) is GRANTED in the manner stated herein as to Count I of the complaint (Doc. 1) and DENIED as to Counts II, III, and IV.  Judgment is due to be entered in favor of the plaintiffs as to Count I of the complaint.

2.   Defendants' motion for judgment on the pleadings (Doc. 63) is DENIED in the manner stated herein as to Count I of the plaintiffs' complaint (Doc. 1) and

---

[24] As noted above, the court does not reach any legal claim that is not expressly analyzed herein, including the parties' arguments regarding the expeditiousness of the bypass proceeding and its adversarial nature.

GRANTED as to Count II, III and IV.  Counts II, III & IV of the plaintiffs' complaint are due to be DISMISSED WITHOUT PREJUDICE.

3. Plaintiffs' motion for a preliminary injunction (Doc. 2) is DENIED as moot.

4. Plaintiffs' prayer for permanent injunctive relief is due to be DISMISSED WITH PREJUDICE as moot.

5. Defendants' motion to defer ruling (Doc. 73) is DENIED as moot.

Furthermore, consistent with this memorandum opinion, it is

**ORDERED, ADJUDGED, and DECREED** that the court **DECLARES** the following:

1. Plaintiffs' challenge to Alabama Code § 26-21-4(a) is moot because the parties and the court agree that the plain language of the Act exempts out-of-state minors from the parental consent requirement of Alabama Code § 26-21-1 et seq.

2. The following portion of Alabama Code § 26-21-4(c) is constitutional:

> "The court shall insure that the minor is given assistance in preparing and filing the petition. Such assistance may be provided by court personnel including intake personnel of juvenile probation services. The minor's identity shall be kept confidential, but her identity may be made known to the judge … [and] any appropriate court personnel[25] …. Any person who is given the identity of the minor shall keep her name confidential and shall not give it to any other person[.]"

---

[25] *See Akron II*, 497 U.S. at 513.

The language of Alabama Code § 26-21-4(c) that is not expressly set out above is unconstitutional and unenforceable, and it is severed from the statute.

3. The following provisions of the Act unconstitutionally and impermissibly impose an undue burden on a minor in Alabama who seeks an abortion through a judicial bypass, and they are adjudged to be unenforceable in their entirety: Alabama Code §§ 26-21-4(i), (j),[26] and (l).

4. Alabama Code § 26-21-4(f) is unconstitutional to the extent that the bypass court is vested with the authority to "issue instanter subpoenas or otherwise permit any party or participant in the hearing to bring before the court admissible evidence or testimony either in support of or against the petition." Consistent with and in the manner discussed herein, *see* p. 48-49, *infra*, that portion of the statute is severed from the remainder; however, the severance in no way restricts the minor petitioner from access to any lawful and available means of meeting her burden of proof on a bypass petition.  *See* Alabama Code § 26-21-4(h).

5. Alabama Code § 26-21-4(k) is unconstitutional to the extent that it permits any party to a bypass proceeding other than the minor petitioner "to obtain evidence, subpoena witnesses, or to obtain and present any evidence or information which

---

[26] The court makes no finding regarding the constitutionality of Alabama Rule of Civil Procedure 17(c), which provides that, "[w]hen the interest of an infant unborn or unconceived is before the court, the court may appoint a guardian ad litem for such interest." The plaintiffs do not challenge the constitutionality of Rule 17(c). Notably, Alabama Code § 26-21-4(j) significantly expands the rights of such a guardian ad litem beyond the plain language of Rule 17(c) – *i.e.*, under Rule 17(c), the guardian ad litem is not expressly permitted to subpoena witnesses, examine the minor petitioner, or appeal any decision by the judicial bypass court.

will be necessary and appropriate for the court to make an informed decision." That portion is severed from the remainder of the statute.

6. Because the court holds herein that the Act unconstitutionally adds parties other than the minor petitioner – *i.e.*, the District Attorney, a guardian ad litem for the fetus, and the parent, parents, or legal guardian of the minor petitioner – without adequate safeguards to ensure the minor petitioner's anonymity, the provisions of the Act that allow for any actions to be taken by those additional parties are a nullity.  Therefore, Alabama Code §§ 26-21-4(e) & (n) are unconstitutional and unenforceable insofar as those sections permit parties other than the minor petitioner to take actions related to the judicial bypass proceeding, and they are severed from the remainder of the statutes.

A final judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE, on this the 28th day of July, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge